UNITED STATES of America,
Plaintiff-Appellee,

v.

Dennis S. JORDAN and Clyde H. Smith,
Defendants-Appellants.

No. 79–5683.

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1980.

Rehearing Denied Nov. 10, 1980.

Sterling G. Culpepper, Montgomery, Ala., for defendants-appellants.

David L. Allred, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before VANCE and GARZA, Circuit Judges, and ALLGOOD, District Judge *.

ALLGOOD, District Judge:

Appellants, Dennis S. Jordan and Clyde H. Smith, appeal their convictions of conspiracy to defraud the United States, 18 U.S.C. § 371.[1]  The appellants contend that

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. 18 U.S.C. § 371 provides:
   Conspiracy to commit offense or to defraud United States

the evidence at the jury trial was insufficient to establish that either of them was engaged in a conspiracy. We affirm the conviction of Clyde Smith, but reverse the conviction of Dennis Jordan.

At the time of the trial Clyde Smith had been owner of Smith Brothers Dairy, a wholesale distributor of Barber Milk Products in Bullock County, Alabama, for thirty-one years. The dairy had delivered milk products to the Bullock County schools for all of the thirty-one years and had delivered milk to the South Highlands Middle School in Union Springs, Alabama, where James E. Price was principal, for the previous fifteen years. Dennis Jordan was employed by the dairy where he performed general office duties in 1974 and later assumed delivery duties and became the general manager of the dairy.

During the years 1974 through 1979 South Highlands participated in the National School Lunch Program pursuant to which the school was entitled to federal reimbursement for each qualifying meal served to eligible students. A qualifying meal was one in which one of the nutritional requirements was that a half-pint of milk be served with it. Daily records were kept by Price on a Form 106 as to the number of lunches and breakfasts served, and the number of milks purchased and served. Reimbursement was made to the school based upon a monthly claim Form 107 which was maintained and completed by Price and submitted through the State of Alabama Department of Education.

On August 1, 1979, Smith and Jordan were indicted by a federal grand jury and charged in Count I of the indictment with conspiring with three co-defendants to defraud the United States and of (1) making false statements in violation of 18 U.S.C. § 1001 or (2) of making false claims in violation of 18 U.S.C. § 1001[2], or (3) of stealing or embezzling money or other property of the United States in violation of 18 U.S.C. § 641.[3] The count charged, in essence, that Smith and Jordan conspired with principal Price, a Mrs. Hall, the school's lunchroom manager, and a Mrs. Jackson, the county associate superintendent of education, to submit false claims to the Department of Agriculture for reimbursement for school lunches. All defendants went to trial except Price who pleaded guilty. At the close of the government's case Mrs. Jackson's motion for judgment of

---

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

**2.** 18 U.S.C. § 1001 provides:
Statements or entries generally
Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** 18 U.S.C. § 641 provides:
Public money, property or records
Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

acquittal was granted, but such motion for each of the other defendants was denied. After guilty verdicts were returned for the remaining three defendants, both appellants moved for a new trial and the motion was denied. Appellants now appeal claiming insufficient evidence to convict.

The evidence at the trial according to Smith's testimony was that in October, 1974, Smith was approached by Price at South Highlands School where Price told him that he was "running a surplus of milk due to the fact that some of the children would not drink . . . white milk." Record, Vol. 3, at 241. Smith testified further:

> For this reason he was running a surplus of half pints of milk. He said this half pint of milk, he was required to have a half pint of milk for each lunch served. In order to do that he was having to throw milk away because of the fact he was having to order this milk that children were not drinking and he had an excess of milk and having to throw it out; would I replace that milk or would I bring him orangeade in place of this milk. I told him that, yes, I would but in order to do it I would have to compute the price of orangeade and divide it by the cost of milk because milk and orangeade was not the same price.

*Id.*

Price asked Smith to show the juice on the invoices as milk and he agreed. A formula was developed to compute the number of cartons of milk to be shown on the invoices and which resulted in the school paying only the price of the actual number of juices and milks delivered. The dairy began to deliver milk and juice which was invoiced as milk, in 1974 and continued this practice until 1979.

Appellant Jordan knew about the delivery and invoicing arrangement. Smith told Jordan about the formula and instructed him to show the orangeade on the school's invoices as milk. In 1974 Jordan kept the dairy's books, and later made deliveries and prepared the invoices.

A statement signed and corrected by Smith was also introduced into evidence. Government Exhibit 63. John Judge, a Department of Agriculture Inspector, prepared the statement based on interviews with Smith. The statement differed from Smith's testimony in that Smith told Judge that Price had told him "that the National School Lunch Program requires that a half pint carton of milk be served with each meal." *Id.* at 1.

In February, 1979, Oates, the county school superintendent, asked to see the dairy's records of milk delivery. When Smith reported this request to Price and told him that he would have to tell the truth about the arrangement, Price prevailed upon Smith not to tell Oates about the orangeade being billed as milk, assuring him that he could account for the money from the sale of the fruit drink. Smith agreed and when he met with Oates he told him that Price was paying cash for the juices. Smith testified at the trial that:

> Knowing that there was friction between Mr. Oates and Mr. Price; this was due to a general feeling and rumors in the community. I personally did not know what it was all about. But I made the decision not to tell Mr. Oates but instead to give Mr. Price the opportunity to tell Mr. Oates himself and let them straighten out their own differences. So I did not tell Mr. Oates that I was selling orangeade and billing them out as milk. In fact, I told him that Mr. Price was paying cash for his orange juice. Upon leaving Mr. Oates' office I went back to South Highlands School to see Mr. Price and told him what I had done. He said that's good, said I can handle it, and pulled out a ledger, composition book, as best I remember, opened it up and said here is the orangeade, the money from the orangeade that I have—I can account for each and every one of them. I told Mr. Price the thing to do, I said we are going to have to—you are going to have to tell the truth about the orangeade, how you purchased the orangeade, why, and in detail. I said take your records and go to Mr. Oates and talk to Mr. Oates and explain to him and work this problem out. About three days later, two or three days, I am not sure, he came by my office, come in

and he said that he had taken his records to Mr. Oates, he had explained it to Mr. Oates and Mr. Oates' reply was that's fine, that's good.

Record, Vol. III, at 246.

Neither Oates nor Price testified at the trial so it was essentially the foregoing testimony which was submitted to the jury. The sufficiency of the evidence must be examined in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). "It is for the jury to determine the guilt or innocence of a defendant; an appellate court should not interfere unless it concludes that the jury must necessarily have had a reasonable doubt." *United States v. Smith*, 523 F.2d 771, 774 (5th Cir. 1975), *cert. denied, Smith v. United States*, 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976).

■ Was the evidence sufficient to support the jury verdict of guilty in the conspiracy charge? In order to be convicted of a conspiracy one must have knowledge of such conspiracy and must intend to join or associate himself with the objective of the conspiracy. *Ingram v. United States*, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959). The defendants must be aware of the essential nature and scope of the enterprise and intend to participate. *United States v. Conroy*, 589 F.2d 1258 (5th Cir. 1979), *cert. denied, Conroy v. United States*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). "The essence of conspiracy is agreement; '[n]obody is liable in conspiracy except for the fair import of the concerted purpose or agreement as he understands it.' [citations omitted]". *Id.* at 1269. Smith admits that he agreed to falsify the invoices and to lie to the county school superintendent. When he was asked upon cross examination whether he knew that the federal government paid for the school lunch program, Smith answered that he knew that the federal government was involved but that he did not know the exact workings of it. Record, Vol. III at 260. Although it is a close question, when the evidence is taken in the light most favorable to the government, it is sufficient to affirm the conviction of Smith.

■ Jordan admits that he agreed to follow Smith's instructions in falsifying the invoices. There was no evidence that he was ever told the purpose of such a practice. In fact, there was evidence that he had no understanding of the reason for submitting the false invoices to the school. Record, Vol. III at 288. The government failed to show agreement on the part of Jordan and "[i]t is fundamental that a conviction for conspiracy under 18 U.S.C. § 371 cannot be sustained unless there is 'proof of an agreement to commit an offense against the United States.'" *Ingram*, 360 U.S. at 677–678, 79 S.Ct. at 1319. Therefore, the conviction of Jordan must be reversed.

■ The appellants contend that the court erred in sustaining the government's objections to the defendants' offer into evidence of records of school attendance and milk delivery for three school years prior to the period covered by the indictment. We hold that it was within the court's discretion to exclude possibly irrelevant, confusing and misleading evidence.

AFFIRMED IN PART; REVERSED IN PART.