PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
03/12/99
THOMAS  K. KAHN
CLERK

_____

No. 97-4202

_____

D. C. Docket No. 91-522-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUZ MARLENEY CALDERON,
a.k.a. "Eileen",

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 12, 1999)**

Before ANDERSON, DUBINA and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Appellant Luz Marleney Calderon was convicted after a jury trial of laundering monetary instruments, in violation of 18 U.S.C. § 1956(a)(1), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 371. More than seven months after her conviction, Appellant filed a motion for a judgment of acquittal under Fed. R. Crim. P. 29. The district court granted the motion. This Court reversed, ruling that the district court did not have jurisdiction to consider Appellant's untimely Rule 29 motion, and remanded for entry of a judgment of conviction and sentence. Appellant now challenges the sufficiency of the evidence as to both counts of conviction, as well as the sentence imposed by the district court. We hold the evidence is insufficient to support the convictions and therefore do not reach the sentencing issue.

## I. BACKGROUND

In 1989, Drug Enforcement Agency (DEA) Special Agent Victor Perez was involved in an undercover investigation of money laundering linked to Colombian narcotics trafficking. He operated out of an office set up by the DEA in Coconut Grove, where he could receive cash to be laundered.

On October 11, 1989, a cooperating individual (CI) advised Agent Perez that Oscar Chaquea, for whom Agent Perez had laundered money in the past, wanted to deliver $150,000 to be laundered. Agent Perez instructed the CI to arrange a meeting for the next day at a Burger King restaurant. At about 1:20 p.m. the next day, Agent

2

Perez met the CI and Appellant, who introduced herself as Eileen, at the designated Burger King. Agent Perez confirmed that Appellant had the money and asked her to follow him to his office in her car.

Once Appellant and Agent Perez arrived at the undercover office, Appellant parked in the underground lot and retrieved a gray gym bag from her car.[1] Appellant followed Agent Perez to a conference room, where Agent Perez set up a money counting machine.[2] In response to Agent Perez's inquiry, Appellant said the money totaled $150,000.

Appellant and Agent Perez talked while Agent Perez used the machine to count the money. Appellant said she was from Colombia, but had lived in the United States since the 1970s. In response to Agent Perez's inquiry, Appellant denied knowing "Oscar." Appellant also told Agent Perez she worked as a respiratory therapist. Agent Perez asked Appellant if she would consider working for him. Appellant asked what he had to offer, and Agent Perez responded: "A little bit of everything." Appellant ultimately stated that she could not "live like this all the time." When Agent Perez asked Appellant if she had been in "this business" a long time, she replied that she had not.

---

[1] The CI left before Appellant and Agent Perez went up to the undercover office.

[2] The events in the conference room were captured on a videotape that was shown to the jury at trial.

In response to Agent Perez's question about how long it takes her to count the money "they" give to her, Appellant stated "[i]t depends," and added it took her about an hour to count the money she delivered to Agent Perez. In response to further inquiry from Agent Perez, Appellant said she rarely loses count.

At one point, Agent Perez pointed out to Appellant that the money was leaving cocaine residue on the machine. He further noted that the residue was so heavy he could make two lines of it. According to Agent Perez's trial testimony, Appellant acknowledged that the residue was cocaine. In response to Agent Perez's statement that "sometimes the money is illegal," Appellant responded, "Yes, all dirty."

When Agent Perez finished counting the money, he informed Appellant that the total was $180 short of $150,000. After recounting the stack of money Agent Perez said was short and agreeing with his figure, Appellant supplied the missing $180 from a bundle of money in her purse. Upon completion of the transaction, Agent Perez asked Appellant if he would see her again soon. Appellant simply responded, "Maybe."

When Appellant left Agent Perez's office, she drove about two blocks and stopped to make a call from a pay phone. She then drove to a restaurant and remained inside for about 15 minutes. Appellant next drove to another pay phone and made another call. Appellant then drove to a travel agency and parked behind the building.

4

The car Appellant had been driving was registered to Appellant's sister, Luz Dari Calderon. Appellant next carried a red and white gym bag to a car in front of the building and put the gym bag in the trunk of that car. This car was registered to Appellant, Luz Marleney Calderon. After using a pay phone a couple of doors down from the travel agency, Appellant went into the travel agency where, Appellant testified at trial, her sister worked.

Following his transaction with Appellant, Agent Perez took the $150,000 to the DEA office for safekeeping. On October 13, 1989, he confirmed with Chaquea that the money had been delivered. Agent Perez then delivered $142,500 (the $150,000 minus a five percent fee) to AmeriFirst bank and requested that the money be wired to Chaquea's account in a branch of Sun Bank. The transfer was completed on October 16, 1989.

At trial, Appellant called three character witnesses. She also testified on her own behalf. She testified that on October 12, 1989, her sister, Luz Dari Calderon, asked her as a favor to follow the CI to Coconut Grove and deliver money there. Appellant's sister allegedly could not deliver the money herself because she had to get back to work. Appellant testified that her sister told her the money totaled $150,000 in tens and twenties and that when she asked her sister about the money, her sister simply said she had agreed to deliver it for a friend. Appellant further stated that her

5

sister repaid her the $180 she had given to Agent Perez to make up the shortfall, but she was not paid for delivering the money. Appellant also testified that she did not know the money had been derived from illegal activities and did not know Chaquea or any of the other individuals named in the indictment.

## II. ANALYSIS

Appellant contends the evidence is insufficient to support a conviction on either the substantive money laundering charge or the conspiracy charge. In evaluating the sufficiency of the evidence, we "view the evidence in the light most favorable to the [G]overnment, with all reasonable inferences and credibility choices made in the [G]overnment's favor." *United States v. Martinez*, 83 F.3d 371, 374 (11th Cir. 1996).

A.    Section 1956(a)(1) Conviction

18 U.S.C. § 1956(a)(1) provides:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or
(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part—

6

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1). The four subsections of Section 1956(a)(1) are separate offenses, each of which requires the Government to prove an element not required under the others.

With respect to the substantive Section 1956(a)(1) charge, the indictment alleges that Appellant:

did knowingly and wilfully conduct a financial transaction affecting interstate and foreign commerce, to wit: the transfer, delivery and movement of monetary instruments being United States currency, which involved the proceeds of a specific unlawful activity, that is, the receiving, concealment, buying, selling, and otherwise dealing in narcotics and dangerous drugs . . . *with the intent to promote the carrying on of the specified unlawful activity, or to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity*; and that while conducting such financial transaction, knew the property involved in the financial transaction, that is, monetary instruments in United States currency, represented the proceeds of some form of unlawful activity.

(Emphasis added). Thus, the indictment alleges Section 1956(a)(1)(A)(i) promotion and Section 1956(a)(1)(B)(i) concealment violations. At some point during trial, the

7

Government abandoned the concealment charge. The district court therefore instructed the jury on only the promotion charge.

To obtain a conviction on a substantive Section 1956(a)(1)(A)(i) promotion charge, the Government bears the burden of proving beyond a reasonable doubt that: (1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew the property involved in the transaction represented the proceeds of unlawful activity; (3) the property involved was in fact the proceeds of the specified unlawful activity; and (4) the defendant conducted the financial transaction "with the intent to promote the carrying on of [the] specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i). In this case, the Government failed to prove Appellant intended to promote the carrying on of the specified unlawful activity of narcotics trafficking.

At trial, Agent Perez testified that the general purpose of the undercover investigation was to:

> [T]arget the major money laundering traffickers out of Colombia; that they were selling or trying to money launder the proceeds of the sale of cocaine in the United States through a money laundering system which we helped to set up so that ultimately that money would be delivered to Colombia so they can pay their creditors and workers.

This testimony did not, however, touch on the specific transaction involved here, or even on the series of transactions between Agent Perez and Chaquea. In fact, the only

8

testimony pertaining to the transactions between Agent Perez and Chaquea goes to concealment.

Moreover, when the Government cross-examined Appellant, the focus of the questioning was to undermine Appellant's direct testimony that she did not know the money originated from an unlawful activity or that she was engaging in an unlawful activity by delivering the money to Agent Perez. There were no questions directed at discovering Appellant's intent in conducting the transaction. Even more telling is the Government's closing argument, where the Government stated:

> So obviously there had to be an agreement by this lady with someone else to launder this money, to deliver the money for the purpose of not putting it into a regular banking institution where you have to make out a form for every $10,000, not letting the Government know about $150,000 in drug proceeds. And so in doing this you facilitate the narcotics trafficking in this community.

Although the Government argued that concealment and avoidance of transaction reporting requirements facilitate narcotics trafficking, the Government must prove more than that to obtain a Section 1956(a)(1)(A)(i) promotion conviction. Otherwise, no purpose would be served by the separate Section 1956(a)(1) subsections. In fact, the Government conceded as much at oral argument when it agreed that the promotion conviction must be reversed if the evidence shows no more than intent to conceal.

In support of its argument that the evidence is sufficient to support the Section 1956(a)(1)(A)(i) promotion conviction, the Government relies on *United States v.*

9

*Skinner*, 946 F.2d 176 (2d Cir. 1991), in which the Second Circuit upheld a promotion conviction where the defendant repeatedly transported money orders to a co-conspirator to pay for completed purchases of cocaine. *Id.* at 177-78. The Government also relies on cases from the Third, Fifth, Sixth, and Ninth Circuits upholding Section 1956(a)(1)(A)(i) promotion convictions where the evidence showed the defendant cashed or deposited, or caused to be transferred, checks representing the proceeds of unlawful activities. *See United States v. Haun*, 90 F.3d 1096, 1100-01 (6th Cir. 1996) (upholding promotion conviction where the evidence showed that by cashing or depositing the checks representing the proceeds of fraudulent car sales, the defendant intended to promote "not only his prior unlawful activity, but also his ongoing and future unlawful activity"); *United States v. Cavalier*, 17 F.3d 90, 93 (5th Cir. 1994) (upholding promotion conviction where an insurance company transferred a check to a lien holder based on the defendant's false auto theft report; "Allstate's transfer of a check to GMAC furthered [defendant's] scheme to defraud by extinguishing the lien on the van" and "contributed to the prosperity of, and therefore promoted the complete mail fraud"); *United States v. Paramo*, 998 F.2d 1212, 1218 (3d Cir. 1993) (upholding promotion conviction where defendant cashed embezzled checks because defendant understood the checks would be worthless unless exchanged for negotiable currency); *United States v. Montoya*, 945 F.2d 1068, 1076

10

(9th Cir. 1991) (upholding promotion conviction where the defendant deposited a check representing the proceeds of the unlawful activity because the defendant "could not have made use of the funds without depositing the check" and "depositing the check provided an opportunity for [defendant] to carry out the illegal bribery by characterizing the funds as a legitimate honorarium").

We need not decide whether the cases relied upon by the Government were rightly decided because it appears that in each of those cases there was significantly more evidence of an intent to promote the carrying on of a specified unlawful activity than we have here. In this case, there is no evidence indicating how the money was to be spent once it was deposited into Chaquea's account. Moreover, the Government did not present any evidence showing that Appellant's conduct furthered the alleged underlying narcotics trafficking or that Appellant's conduct added to the profitability of the alleged narcotics trafficking. Furthermore, the underlying narcotics trafficking apparently was a cash business and therefore was profitable even absent Appellant's conduct. Although these are all bases on which to distinguish this case from those relied upon by the Government, we do not mean to suggest that the presence of any such evidence in this case would be sufficient to support a promotion conviction. We simply state that the distinguishing characteristics of this case make it unnecessary for us to decide whether we agree with the cases cited by the Government.

11

The evidence in this case shows only that Appellant entered into the transaction with Agent Perez knowing the transaction was designed to conceal the nature or source of the proceeds, which would be a violation of Section 1956(a)(1)(B)(i), or arguably, as the Government contended in closing, to avoid state or federal transaction reporting requirements, which would be a violation of Section 1956(a)(1)(B)(ii).[3] This is insufficient to support a Section 1956(a)(1)(A)(i) promotion conviction.[4] It may well be that the Government could have proven, through cross-examination of Appellant or testimony from the CI, that Appellant acted with the intent to promote the carrying on of narcotics trafficking. Nevertheless, it simply did not do so at trial. We therefore reverse Appellant's Section 1956(a)(1)(A)(i) promotion conviction.[5]

---

[3] We do not hold, and in fact doubt, that the evidence would support a Section 1956(a)(1)(B)(ii) avoidance of transaction reporting requirements conviction. Nevertheless, we need not resolve that issue here because Appellant was not charged with such a violation.

[4] Based on our conclusion that the evidence is insufficient to establish Appellant intended to promote the carrying on of the specified unlawful activity of narcotics trafficking, we do not address Appellant's other arguments pertaining to the sufficiency of the evidence.

[5] Due to our conclusion that the Government proved no more in this case than that Appellant engaged in the financial transaction with Agent Perez knowing the transaction was designed to conceal the nature or source of the proceeds or arguably, as the Government contended in closing, to avoid state or federal transaction reporting requirements, it is unnecessary for us to delineate the scope of activities encompassed within the Section 1956(a)(1)(A)(i) promotion prong.

We do note that the Sentencing Commission's treatment of Section 1956 offenses illustrates one way in which the promotion offense may differ from the concealment and avoidance of transaction reporting requirements offenses. U.S.S.G. § 2S1.1 is the applicable guideline provision for a defendant convicted under 18 U.S.C. § 1956. U.S.S.G. § 2S1.1 provides for a base offense level of 23 if a defendant is convicted of a Section 1956(a)(1)(A)(i) promotion charge, but for a base offense level of 20 if a defendant is convicted of a Section 1956(a)(1)(B)(i) concealment charge or a Section 1956(a)(1)(B)(ii) avoidance of transaction reporting requirements charge. The

12

B.    Section 371 Conspiracy Charge

The indictment alleges Appellant entered into a conspiracy with a number of other individuals and that the purpose and object of the conspiracy was:

> [T]o knowingly and wilfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is, the receiving, concealment, buying, selling and otherwise dealing in narcotic and dangerous drugs . . . *with the intent to promote the carrying on of the specified unlawful activity*, and that while conducting and attempting to conduct the financial transactions, the defendants knew that the property involved in the financial transactions, that is, monetary instruments being United States currency, represented the proceeds of some form of unlawful activity.

(Emphasis added).   Appellant argues that although the conspiracy alleged in the indictment may have existed, there is insufficient evidence to support a finding beyond a reasonable doubt that she joined such a conspiracy.

"In order to be convicted of a conspiracy one must have knowledge of such conspiracy and must intend to join or associate [herself] with the objective of the conspiracy." *United States v. Jordan*, 627 F.2d 683, 686 (5th Cir. 1980) (citation

---

commentary to U.S.S.G. § 2S1.1 explains the different offense levels as follows:
> A higher base offense level is specified if the defendant is convicted under 18 U.S.C. § 1956(a)(1)(A) . . . because [that] subsection[] appl[ies] to defendants who encouraged or facilitated the commission of *further* crimes.

U.S.S.G. § 2S1.1, commentary (background) (emphasis added).  We need not decide in this case whether a defendant can promote, within the meaning of Section 1956(a)(1)(A)(i), past and future unlawful conduct or future unlawful conduct only.

13

omitted).[6]  A defendant "must be aware of the essential nature and scope of the enterprise and intend to participate." *Id.* (citation omitted); *see also United States v. Gold*, 743 F.2d 800, 824 (11th Cir. 1984).  Thus, to support Appellant's conviction on the conspiracy charge, the Government had to present evidence that Appellant agreed to conduct and attempt to conduct financial transactions with the intent to promote the carrying on of the specified unlawful activity of narcotics trafficking.

As set out above, the Government failed to prove Appellant intended to promote the carrying on of narcotics trafficking.  The Government also did not prove or link Appellant to any other transaction entered into with the intent to promote the carrying on of narcotics trafficking.  On this basis, we reverse Appellant's conspiracy conviction.

## III.  CONCLUSION

The evidence is insufficient to support Appellant's convictions.  There is no basis on which a reasonable jury could have found beyond a reasonable doubt that Appellant entered into the financial transaction with Agent Perez with the intent to promote the carrying on of narcotics trafficking or that Appellant joined a conspiracy having such conduct as its object.

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

REVERSED.