[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 13, 2001
THOMAS K. KAHN
CLERK

No. 01-10319

_____

D. C. Docket No. 99-00084-CR-T-26

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY CARCIONE, a.k.a. Tony,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 13, 2001)**

Before ANDERSON, Chief Judge, HULL and FAY, Circuit Judges.

FAY, Circuit Judge:

I. Introduction

Anthony Carcione ("Appellant") appeals his criminal convictions and sentences for conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, (Count one); traveling in interstate commerce in furtherance of an unlawful activity, in violation of 18 U.S.C. § 1952(a)(2), (Count two); conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h), (Count three); money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (Count four); conspiring to interfere with commerce by robbery in violation of 18 U.S.C. § 1951, ("Hobbs Act") (Count five); committing interference with commerce by robbery in violation of 18 U.S.C. § 1951, (Count six); and interstate transportation of stolen property, knowing the same to have been stolen, in violation of 18 U.S.C. § 2314, (Count seven).[1]  Appellant was sentenced to 60 months as to count one, life as to count two, twenty years as to count three, twenty years as to count four, twenty years as to count five, twenty years as to count six, and ten years as to count seven, all terms to run concurrent with each other.  For the following reasons, we affirm the convictions and sentences in all respects.

---

[1] Appellant also appeals the district court's order that he be required to make restitution in the amount of $162,500 pursuant to 18 U.S.C. § 3612.  Reviewing the district court's determination under a clearly erroneous standard, we find no justification to disturb the court's findings.  See United States v. Bourne, 130 F.3d 1444, 1446 (11th Cir. 1997).

## II. Background

The facts giving rise to this matter arose out of the home invasion, robbery, and murder of a wealthy 78 year old woman, Jean Schwarzkopf, who resided in New Port Richey, Florida. In late 1996 or early 1997, Ottavio Volpe made the acquaintance of Mrs. Schwarzkopf, who resided in a subdivision located near a bakery that he owned. Realizing her wealth, he formulated a plan to rob Mrs. Schwarzkopf of her jewelry. At first, although Volpe was aided by a local co-conspirator, the plan failed. Volpe then decided to enlist the assistance of friends and acquaintances in Chicago to complete the robbery.

In August 1997, Volpe contacted Camillo Gigliotti in Chicago, and attempted to persuade him to come to Florida to rob Mrs. Schwarzkopf. Gigliotti refused to do so personally, but proceeded to contact Faris Rafidi, a Chicago restauranteur, to inquire who might be willing to travel to Florida to accomplish the robbery. Rafidi suggested to Gigliotti that he contact Appellant.

On September 18, 1997, Appellant flew from Chicago to Tampa. Volpe picked him up, and they drove to Volpe's bakery in New Port Richey. The next morning, after buying flowers, gloves, and duct tape, Appellant approached Mrs. Schwarzkopf's door posing as a flower delivery man. After the door was opened, Appellant forced himself into Mrs. Schwarzkopf's home, and hit her in the face.

3

Throughout the ordeal, Appellant broke Mrs. Schwarzkopf's nose, fractured her cheekbone, neck and rib, and caused multiple bruises throughout the rest of her body. He then bound Mrs. Schwarzkopf with duct tape from head to toe. Before he taped her mouth shut, he stuffed a silk flower down her throat, causing hemorrhaging at the base of her tongue. Mrs. Schwarzkopf suffocated from the bleeding caused by the injuries to her nose and mouth.

After the robbery, Volpe picked up Appellant about one block from Mrs. Schwarzkopf's home. Appellant had taken Mrs. Schwarzkopf's purse, her wallet and its contents, and her jewelry, including a seven and one-half carat diamond ring, a strand of pearls, a diamond and platinum tennis bracelet, and a sapphire tennis bracelet. Later that same day, Appellant admitted to Volpe that he had killed Mrs. Schwarzkopf, and threatened Volpe not to say anything or he would kill Volpe and his girlfriend. That evening, Volpe contacted Gigliotti and told him to come to Florida to come pick up Appellant.

Gigliotti agreed to pick up Appellant in Florida, but later called Volpe from Valdosta, Georgia, and told him that he would not drive any further south. On September 20, 1997, Volpe (along with an unwitting employee of Volpe's) drove Appellant from New Port Richey, Florida, to Valdosta Georgia, where they met Gigliotti. Gigliotti then drove Appellant back to Chicago along with the items

4

taken from Mrs. Schwarzkopf in the robbery.

When Gigliotti and Appellant arrived in Chicago, they went to Farris Rafidi's restaurant and met in his office. Gigliotti then decided to dispose of all of the jewelry except the diamond ring because he believed the rest of the jewelry was worthless. The diamond ring was eventually purchased by Rafidi for $22,000. The money was divided among the co-conspirators. Appellant's cut was $10,000, Gigliotti's was $8000, and Volpe's was $4000.

## III. Discussion

There are two issues Appellant advances that warrant discussion.[2] We first address Appellant's argument that the government failed to prove the necessary effect on interstate commerce as required by the Hobbs Act, 18 U.S.C. § 1951, (Counts five and six).[3] We then address the propriety of Appellant's convictions for conspiracy to commit money laundering under 18 U.S.C. 1956(h), (Count

---

[2]Appellant's other challenges are all based on the sufficiency of the evidence adduced at trial. We have reviewed the record and believe they have no merit and do not warrant further discussion.

[3]Embodied within his challenge to the evidence and the effect of interstate commerce as applied to the Hobbs Act, Appellant incorporates by reference a challenge to count two of his conviction under the Travel Act, 18 U.S.C. 1952(a)(2). Because both matters contain an element of interstate commerce, any discussion of interstate commerce herein is applicable to counts two, five, and six. See, e.g., United States v. Kaplan, 171 F.3d 1351, 1356 (11th Cir 1999) (stating that the same conduct may violate more than one statute).

three) and money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), (Count 4).[4]

A.  Hobbs Act

We review Appellant's convictions under the Hobbs Act <u>de</u> <u>novo</u>.  <u>See</u>, <u>e.g.</u>, <u>United States v. Gray</u>, 260 F. 3d 1267, 1271 (11th Cir. 2001) ("Whether sufficient evidence was presented at trial to support appellants' convictions is a question of law subject to <u>de</u> <u>novo</u> review.") (quoting <u>United States v. Diaz</u>, 248 F.3d 1065, 1084 (11th Cir. 2001)).  We consider that evidence in the light most favorable to the government, drawing all inferences and credibility choices in favor of the jury's verdict.  <u>See</u> <u>United States v. Guerra</u>, 164 F.2d 1358, 1359 (11th Cir. 1999).

The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do. . . shall be fined under this title or imprisoned not more that twenty years, or both."  18 U.S.C. § 1951(a).  The Act broadly defines "commerce" as being "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession or the District of

---

[4]Similarly, our discussion below of money laundering under 18 U.S.C. 1956(a)(1)(A)(i) is applicable to Appellant's conviction under the Travel Act, 18 U.S.C. § 1952(a)(2), (Count two).  Necessary for a conviction under § 1952(a)(2) is the intent to "commit any crime of violence to further any unlawful activity," and thereafter performing it or attempting to perform it. 18 U.S.C. § 1952 (a)(2).  The "unlawful activity" used for the conviction in this case is money laundering under 18 U.S.C. § 1956(a)(1)(A)(i).

Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." Id. § 1951(b)(3). The Act is expansive in scope and does not "lend [itself] to a restrictive interpretation." United States v. Culbert, 435 U.S. 371, 373 98 S.Ct. 1112, 1113, 55 L.Ed.2d 349 (1978); see also Stirone v. United States, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960) ("[The Hobbs Act] speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence.")

In addressing Appellant's argument, we stress that under this Circuit's binding precedent, a conviction for Hobbs Act robbery may be sustained if there is proof that the defendant's conduct had even a minimal effect on interstate commerce.[5] See, e.g., United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000) ("The government needs only to establish a minimal effect on interstate commerce to support a violation of the Hobbs Act.") (citing Guerra, 164 F.3d at

---

[5]Where conspiracy is charged under the Hobbs Act, the interstate nexus may be demonstrated by evidence of potential impact on interstate commerce, or by evidence of actual de minimis impact. See United States v. Farrel, 877 F.2d 870, 875 (11th Cir. 1989). A substantive violation of the Hobbs Act requires an actual, de minimis affect on commerce. See United States v. Jackson, 748 F.2d 1535, 1537 (11th Cir. 1984). Hence, our findings below of an actual, de minimis impact on interstate commerce are sufficient to sustain both Appellant's conspiracy and substantive violations of the Hobbs Act.

1360, and United States v. Castleberry, 116 F. 3d 1384, 1387 (11th Cir. 1997)).[6] Furthermore, the effect on commerce need not be adverse. See United States v. Kaplan, 171 F.3d 1351, 1357 (11th Cir. 1999).

Operating under the rule that the Hobbs Act only requires a minimal effect on interstate commerce to support a conviction, we now consider whether the government's evidence was sufficient in this case. At the outset, we note the travel of Appellant across state lines both before and after the robbery occurred. In anticipation of the robbery, Appellant flew from Illinois to Florida to meet up with Volpe. Then, after the robbery was completed, Appellant drove to Georgia with Volpe, where he was met by Gigliotti, who proceeded to drive with Appellant back to Illinois. This travel clearly demonstrates an effect on interstate commerce. See id. at 1355-56 (extortion plot affected interstate commerce because it included conspirator's travel from Florida to Panama).

---

[6] At oral argument, Appellant's attorney argued that because Appellant robbed an individual, not a business, the government was required to prove one of the three elements we recited in United States v. Diaz, 248 F.3d 1065, 1085 (11th Cir. 2001) ( (1) the crime depleted the assets of an individual who is directly engaged in interstate commerce; (2) the crime causes the individual to deplete the assets of an entity engaged in intestate commerce; or (3) the number of individuals victimized or the sums involved are so large that there will be a cumulative impact on interstate commerce). We disagree. While this test is an effective barometer for measuring a defendant's actions and their effect on interstate commerce, we have repeatedly held that "in determining whether there is a minimal effect on commerce, each case must be decided on its own facts." Rodriguez, 218 F.3d at1245; Diaz, 248 F.3d at 1087; Kaplan, 171 F.3d at 1358. Likewise, "the words of the Hobbs Act 'do not lend themselves to restrictive interpretation.'" United State v. Gray, 260 F.3d 1267, 1272 (11th Cir. 2001) (quoting United States v. Culbert, 435 U.S. 371, 373, 98 S.Ct. 1112, 1113, 55 L.Ed. 2d 349 (1978).

Moreover, the communication necessary to coordinate the robbery also affected interstate commerce. The record demonstrates numerous interstate phone calls between Appellant, Volpe, and Gigliotti before and after the robbery. When "the use of interstate. . . transportation and communication facilities [are used] to carry out a scheme of robbery or extortion [they] may constitute–in conjunction with other facts–a sufficient effect upon commerce for a Hobbs Act conviction. . ." Id. at 1356; United States v. Le, 256 F.3d 1229, 1234 (11th Cir. 2001); see also United States v. Atcheson, 94 F.3d 1237, 1243 (9th Cir. 1996) (stating that defendants' placement of out-of-state phone calls created a further connection with interstate commerce); see also United States v. Lee, 818 F.2d 302, 305 (4th Cir. 1987) (upholding district court's instruction to jury which stated that interstate phone call by bank manager in Maryland to VISA authorization center in North Carolina was in and of itself sufficient to meet the interstate component under 18 U.S.C. § 1029).

Additionally, interstate commerce was affected when Appellant took the jewelry he robbed from Mrs. Schwarzkopf across state lines to Illinois, where Rafidi was waiting to inspect and then purchase the diamond ring. See Atcheson, 94 F.3d at 1243 (transportation of stolen jewelry taken by robbery from victim across state lines directly affected interstate commerce); see also Kaplan, 171 F.3d

9

at 1355 (close nexus between extortion and interstate commerce existed because the plan would have served no purpose if the money from Panama was not ultimately received by the defendant in Florida); United States v. Eaves, 877 F.2d 943, 946 (11th Cir. 1989) (the movement of extortion payments in interstate commerce was sufficient as a jurisdictional prerequisite).

Therefore, based on the evidence presented, we conclude that there is a sufficient effect on interstate commerce to sustain Appellant's convictions under the Hobbs Act.

### B. Money Laundering

Appellant contends that the evidence is insufficient to support his convictions for both the substantive money laundering charge and the money laundering conspiracy charge. To obtain a conviction on a substantive Section 1956(a)(1)(A)(i) promotional money laundering charge, the government bears the burden of proving beyond a reasonable doubt that: (1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew the property involved in the transaction represented the proceeds of unlawful activity; (3) the property involved was in fact the proceeds of the specified unlawful activity; and (4) the defendant conducted the financial transaction "with the intent to promote

the carrying on of [the] specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i).[7]

We find that all of these required elements have been satisfied.[8]

A "financial transaction" means a transaction which in any way or degree affects interstate or foreign commerce involving the movement of funds by wire or other means. 18 U.S.C. § 1956(c)(4)(A)(i). When the diamond was sold to Rafidi, funds were exchanged, and, as stated previously, the movement of this diamond from Florida to Illinois affected interstate commerce. See supra, Part III, subsection A. Clearly the diamond represented the proceeds of the robbery, and Appellant knew the circumstances to be such.

_____

[7]With respect to Appellant's conspiracy to commit money laundering charge, (Count three) 18 U.S.C. § 1956(h) reads: "Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." "In order to be convicted of a conspiracy one must have knowledge of such conspiracy and must intend to join or associate with the objective of the conspiracy." United States v. Calderon, 169 F.3d 718, 723 (11th Cir. 1999) (quoting United States v. Jordan, 627 F.2d 683, 686 (5th Cir. 1980)). A defendant "must be aware of the essential nature and scope of the enterprise and intend to participate." Id. Based on the facts before us, we clearly find sufficient evidence that Appellant, with knowledge and awareness, "agreed to conduct a financial transaction with the intent to promote the carrying on of the specified unlawful activity. . ." Calderon, 169 F.3d at 723.

[8]In his brief, Appellant takes issue with the sufficiency of the evidence with respect to whether the financial transaction was conducted with the intent to conceal the nature or source of the proceeds. However, the intent to conceal or disguise the nature or source of the proceeds was not a required element of the offense for which Appellant was charged. The relevant portion of § 1956(a)(1) defines two different money laundering offenses: those committed with the "intent to promote the carrying on of a specified unlawful activity," 18 U.S.C. § 1956(a)(1)(A)(i); and those committed with the intent "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," 18 U.S.C. § 1956(a)(1)(B)(i). See United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir. 1991) (stating that subsections (A)(i) and (B)(i) are set forth in the disjunctive, and "are aimed at different activities.") (quoting United States v. Jackson, 935 F.2d 832, 842 (7th Cir. 1991)).

11

Finally, turning to the "gravamen" of a § 1956(a)(1)(A)(i) violation, Appellant must have had the intent to promote the carrying on of the specified unlawful activity. United States v. Adams, 74 F.3d 1093, 1100 (11th Cir. 1996) (quoting United States v. Miller, 22 F.3d 1075, 1080 (11th Cir. 1994)). The term "specified unlawful activity" means any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).[9] 18 U.S.C. § 1956(c)(7)(A). Included within the definition of "racketeering activity" under 18 U.S.C. § 1961(1) is 18 U.S.C. § 1951, the Hobbs Act. Hence, conspiring to affect commerce by robbery, a violation of § 1951(a), is a proper predicate for the "specified unlawful activity" that is required for a conviction under 18 U.S.C. § 1956.

Therefore, we agree with the government's argument that the promotion prong of 18 U.S.C. § 1956 is satisfied when analyzed in the context of a conspiracy to commit a Hobbs Act violation. A financial transaction can promote a scheme that is ongoing. See Adams, 74 F.3d at 1100. Here, the conspiracy to commit the robbery was ongoing at the time of the money laundering. From the beginning stages of conspiring to rob Mrs. Schwarzkopf, to planning out the remaining steps leading up to the fencing of the diamond, it is clear to us that this scheme was an

---

[9]Excluded from this definition of "specified unlawful activity" is any act which is indictable under subchapter II of chapter 53 of title 31. This exclusion is irrelevant for our purposes here.

ongoing process. The sale of the diamond was simply one further step in the ongoing Hobbs Act conspiracy. This sale was designed to promote the Hobbs Act conspiracy by turning jewelry into cash – the ultimate objective of the conspiracy. Thus, the financial transaction was an act in furtherance of the ongoing conspiracy offense.[10] Therefore, we uphold Appellant's convictions under 18 U.S.C. § 1956.

IV. Conclusion

For the foregoing reasons, we affirm Appellant's convictions and sentences in their entirety.

AFFIRMED

---

[10]Because of the ongoing Hobbs Act conspiracy, we need not address the issue of whether a "promotion" under 18 U.S.C. § 1956 includes both past and future unlawful conduct, or future unlawful conduct only. See, e.g., Adams, 74 F.3d at 1100; Calderon, 169 F.3d at 722 n.5,