[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 31, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12959
Non-Argument Calendar

_____

D. C. Docket No. 04-00084-CR-A-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NEAL ARMSTRONG,
a.k.a. Neil Armstrong,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(January 31, 2006)**

Before ANDERSON, BARKETT and  HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Neal Roman Armstrong ("Armstrong") appeals his conviction and 109-month sentence for conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). After review, we affirm Armstrong's conviction and sentence.

## I.     BACKGROUND

On May 9, 2003, Wallace Pickett ("Pickett") was arrested in Montgomery, Alabama, for taking possession of a package containing 499.5 grams of cocaine that had been mailed to him from the United States Virgin Islands. After a series of interviews, Pickett eventually informed federal authorities that Armstrong had mailed the cocaine from the Virgin Islands, that Armstrong had supplied Pickett with cocaine on multiple occasions, and that Pickett paid Armstrong for the cocaine by United States Postal Money Orders. Pickett also informed the authorities that he sometimes directed Roderick Perkins ("Perkins") to purchase the money orders sent to Armstrong.

On May 5, 2004, Armstrong was charged in a four-count indictment with conspiracy to distribute and possession with intent to distribute cocaine (Count I), distribution of cocaine (Count II), mailing injurious materials (Count III), and conspiracy to launder monetary instruments (Count IV). Prior to trial, the government voluntarily dismissed Count III.

Both Pickett and Perkins testified at Armstrong's trial. Pickett testified that he met Armstrong in Montgomery, Alabama in the summer of 2002, at which point they agreed to conduct business related to cocaine distribution. According to Pickett's testimony, Armstrong shipped cocaine from the Virgin Islands to Pickett on three or four occasions, beginning in March 2003. Pickett testified that Armstrong sent roughly a quarter kilogram of cocaine on at least two occasions and roughly half a kilogram of cocaine once, in the package intercepted by authorities on May 9, 2003. Per Armstrong's instructions, Pickett paid Armstrong for the cocaine by sending postal money orders by express mail.

Perkins testified that he sometimes assisted Pickett in purchasing and sending money orders to Armstrong. When Perkins purchased and mailed the money orders, Perkins was aware that they were being sent to Armstrong as payment for cocaine, which Armstrong was sending from the Virgin Islands to Montgomery, Alabama.

The government also presented evidence that (1) Armstrong had signed for express mail packages sent by Pickett and Perkins on April 15, 2003, and May 5, 2003; (2) Armstrong's sister signed for an express mail package from Pickett and Perkins on April 23, 2003; and (3) Armstrong endorsed and signed for five money

orders totaling $5,000, which had been purchased by Pickett and Perkins on April 15, 2003.[1]

On November 3, 2004, the jury found Armstrong guilty of Count IV, conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). The jury could not reach a unanimous decision as to Counts I and II. After trial, the district court granted the government's motion to dismiss Counts I and II with prejudice.

The United States Probation Office prepared a presentence investigation report ("PSI"). The PSI determined that Armstrong was accountable for the 499.5 grams of cocaine Pickett received in May 2004 and for two separate 250-gram packages Pickett received in April 2004, for a total amount of 999.5 grams of cocaine. As such, the PSI recommended a base offense level of 26. See U.S. Sentencing Guidelines § 2S1.1(a)(1) (stating that the base offense level for a charge of conspiracy to launder monetary instruments in circumstances applicable to Armstrong is "[t]he offense level for the underlying offense from which the laundered funds were derived"); U.S.S.G. § 2D1.1(c)(7) (assigning a base offense

---

[1]According to Pickett and Perkins, they purchased and sent to Armstrong money orders totaling $5,000 on April 15, $5,000 on April 23, and $8,000 on May 5. However, the government presented evidence identifying Armstrong's endorsement and signature only on the April 15 money orders. The endorsements and signatures for the remaining money orders, sent by Pickett and Perkins to the Virgin Islands, could not be traced to any known person.

level of 26 for unlawful distribution of at least 500 grams but less than two kilograms of cocaine).  The PSI also recommended a specific offense enhancement of two levels, see U.S.S.G. § 2S1.1(b)(2)(B) (two-level enhancement for violation of 18 U.S.C. § 1956), and a two-level enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, for an adjusted offense level of 30.  The PSI assigned Armstrong a criminal history category of I, with a resulting guidelines imprisonment range of 97 to 121 months.

The district court conducted a sentencing hearing on February 23, 2005.  After hearing from witnesses, the district court found by a preponderance of the evidence that 999.5 grams of cocaine should be attributed to Armstrong and that Armstrong had obstructed justice by attempting to solicit the murder of Wallace Pickett prior to trial.  The district court rejected Armstrong's argument that enhancing his sentence based on these findings would violate United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), asserting that such extra-verdict enhancements were permissible under an advisory guideline system.  After considering the advisory guidelines range for an offense level of 30 and criminal history category of I, the district court sentenced Armstrong to 109 months in prison, finding such a sentence reasonable.

## II.    DISCUSSION

Armstrong was convicted of violating 18 U.S.C. § 1956(h), which makes it unlawful to "conspire[] to commit any offense defined in [18 U.S.C. § 1956]. . . ." 18 U.S.C. § 1956(h) (emphasis added). Specifically, Armstrong was convicted of conspiring to commit the offense defined by 18 U.S.C. § 1956(a)(1)(A)(i). That subsection of Section 1956 makes it unlawful (1) to conduct or attempt to conduct a financial transaction (2) that the defendant knows involves the proceeds of some form of unlawful activity (3) with "the intent to promote the carrying on of [the] specified unlawful activity." 18 U.S.C. § 1956 (a)(1)(A)(i); see United States v. Carcione, 272 F.3d 1297, 1302 (11th Cir. 2001) (quoting 18 U.S.C. § 1956(a)(1)(A)(i)). At trial, the government presented evidence that (1) Armstrong cashed or attempted to cash the money orders mailed by Pickett and Perkins; (2) Armstrong knew that the money orders represented the proceeds of the illegal sale of cocaine; and (3) Armstrong took the money in exchange for cocaine he shipped to Perkins with intent to facilitate the illegal sale of cocaine.

On appeal, Armstrong argues that the evidence was insufficient to support a guilty verdict on Count IV in two respects. First, Armstrong contends that the government presented no evidence that he concealed or disguised the nature or source of the money orders he cashed. While Armstrong is correct, concealment is

6

not a necessary element of the offense of which he was convicted, see 18 U.S.C. § 1956(a)(1)(A)(i); United States v. Williamson, 339 F.3d 1295, 1301 n.15 (11th Cir. 2003), cert. denied, 540 U.S. 1184, 124 S.Ct. 1427 (2004).[2]  No evidence of concealment was necessary to convict Armstrong of Count IV.

Second, Armstrong asserts that because he was not convicted of the conspiracy to distribute cocaine charged in Count I, his § 1956(h) conviction for conspiracy to launder monetary instruments derived from the same distribution of cocaine must be reversed.  Contrary to Armstrong's argument, "[a defendant's] personal involvement in, or guilt of, the [underlying drug activity] is not an element of the money laundering charge he was convicted of in this case." United States v. Magluta, 418 F.3d 1166, 1174 (11th Cir. 2005).  The government did not need to prove Armstrong's personal involvement in drug activities, but rather only that Armstrong, "with the requisite knowledge and intent, conducted a financial transaction involving the proceeds of felony drug offenses." Id.; see also United States v. Lozano-Hernandez, 89 F.3d 785, 789 (11th Cir. 1996) (conviction on only one of two related counts may be upheld where "[d]ifferent elements comprise the two offenses, and, in any event, inconsistent jury verdicts are not necessarily a

---

[2]While concealment is an element of 18 U.S.C. § 1956(a)(1)(B)(i), Armstrong was convicted of conspiracy to violate 18 U.S.C. § 1956(a)(1)(A)(i).  Concealment is not an element of 18 U.S.C. § 1956(a)(1)(A)(i).

cause for reversal of a conviction.") (citing United States v. Powell, 469 U.S. 57, 65-67, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984)).

Finally, Armstrong argues that his constitutional rights were violated because his sentence was enhanced based on facts not found by the jury. United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). As the district court correctly noted, "the use of extra-verdict enhancements in a non-mandatory guidelines system is not unconstitutional." United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005). Consistent with Booker, the district court properly calculated Armstrong's guideline range, relying only on facts the government had proven by a preponderance of the evidence. See United States v. Duncan, 400 F.3d 1297, 1304-05 (11th Cir.), cert. denied, 126 S.Ct. 432 (2005) (stating that even after Booker, a sentencing court still may consider conduct of which a defendant was acquitted, "as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence.") (quotation marks and citation omitted). The district court then properly applied the calculated Guidelines range in an advisory fashion. See Rodriguez, 398 F.3d at 1300. We readily conclude that Armstrong's sentence was consistent with Booker and did not violate his Sixth Amendment rights.

Accordingly, we affirm Armstrong's conviction and sentence.

**AFFIRMED.**