UNITED STATES of America, Plaintiff–Appellee,

v.

Kim Hoa HUYNH, Defendant–Appellant.

No. 94–30338.

United States Court of Appeals, Ninth Circuit.

Submitted June 7, 1995 *.

Decided July 19, 1995.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir. R. 34–4 and Fed.R.App.P. 34(a).

Daniel S. Goodman, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: BROWNING, BOOCHEVER, and T.G. NELSON, Circuit Judges.

PER CURIAM:

Kim Hoa Huynh appeals her conviction for extortion affecting interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951. We affirm.

I

Huynh was employed as a social worker at the Washington Department of Social and Health Services. State and federal law enforcement officers went to Huynh's office, informed her that she was under arrest for extortion, advised her of her *Miranda* rights, and asked her to sign a written *Miranda* waiver form that advised her of her rights in both English and Vietnamese, Huynh's first language. Huynh asked the officers to explain what "extortion" meant. They responded that they did not want to talk to her about the charges until she read and signed the form. Huynh then read and signed it. The officers told Huynh several social security applicants had accused her of taking money from them for helping them apply for public assistance. Huynh initially denied the charges but eventually admitted them.

Huynh moved to suppress her statements, offering the testimony of Dr. Paul K. Leung, Associate Director of the Indo–Chinese Psychiatric Program at the Oregon Health Sciences University. Leung testified that Huynh's childhood experiences in Indochina impressed upon her a survival instinct to "do whatever she was instructed to do" by persons in authority, and that her arrest induced such a state of panic that her *Miranda* waiver and confession were "not a product of her free choice." The district court denied the motion to suppress.

We review de novo the voluntariness of a *Miranda* waiver "by ... examining objectively the methods the police used to produce

Steven W. Thayer and Mark W. Muenster, Thayer & Muenster, Vancouver, WA, for defendant-appellant.

the waiver." *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir.1991) (en banc). Essentially, Huynh claimed that her waiver was involuntary because her Southeast Asian background made her incapable of a free and voluntary choice. The Supreme Court has stated, however, that

> [t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion.... Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word.

*Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) (reversing a determination that a *Miranda* waiver was involuntary where the ruling was based on a psychiatrist's testimony that defendant, who believed that the "voice of God" told him to confess, was not capable of making a free choice); *see also Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir.1990) ("'[P]ersonal characteristics of the defendant are constitutionally irrelevant absent proof of coercion.'") (quoting *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir.1987)).

 A defendant's subjective characteristics are relevant to the voluntariness inquiry when there is evidence of psychological coercion, because such personal sensitivities may "render[ ] him more susceptible to subtle forms of coercion." *Commonwealth of Northern Mariana Islands v. Mendiola*, 976 F.2d 475, 485 (9th Cir.1992). However, there was no evidence of even subtle psychological coercion here. Huynh contends the officers coerced her into signing the *Miranda* waiver by refusing to explain the crime of extortion

until she had read and signed the waiver form. The officers' refusal to discuss the substance of the charges until they were sure Huynh knew her rights and voluntarily chose to waive them was not "calculated to pressure [Huynh] into changing [her] mind about remaining silent." *Collazo*, 940 F.2d at 416. It was appropriate for the officers to decline to discuss the charges with Huynh until they had assured themselves that she wished to waive her right to have counsel present.[1]

## II

 Huynh agreed to a bench trial on stipulated facts. The sole issue presented to the trial judge was whether there was a sufficient nexus between Huynh's acts of extortion and interstate commerce to support her conviction under the Hobbs Act.

The stipulated facts established the following. One of Huynh's duties was to assist persons applying for federal Supplemental Security Income (SSI) benefits. The victims' SSI checks were mailed to the victims or their designees at their Washington state addresses from Birmingham, Alabama. Huynh told one applicant she would not receive SSI benefits unless she paid Huynh for Huynh's assistance; when the victim began receiving benefits, Huynh expected the victim to take her out to dinner once a week and buy gasoline for her vehicle. Huynh took the SSI checks of some victims as payment for her assistance. Huynh told other victims the government could stop helping them if they did not do what she said; these victims subsequently bought Huynh groceries and gasoline.

The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by ... extortion or attempts or conspires so to do ... shall be fined ... or imprisoned not more than twenty years, or both." 18 U.S.C.

---

1. Some statements in Huynh's brief suggest that she also contends that her confession following the *Miranda* waiver was coerced; she alleges that one officer pounded her fist on the table and threatened Huynh that she would go to jail for 100 years and never see her mother again. There is no merit to this contention. The district court found that the facts regarding the questioning of Huynh were as the officers testified. This finding was not clearly erroneous. *See Collazo*, 940 F.2d at 415. Under all the circumstances, the officers' actions during the questioning of Huynh were not so coercive that it is "highly likely that [Huynh's] will was overborne." *Mendiola*, 976 F.2d at 486.

§ 1951(a).[2] In determining the sufficiency of the evidence of a connection between an act of extortion and interstate commerce under the Hobbs Act, we "review the evidence in a light most favorable to the Government." *United States v. Pascucci,* 943 F.2d 1032, 1035 (9th Cir.1991).

"[A]n effect on interstate commerce is established by proof of an actual impact, however small, or in the absence of actual impact, by proof of a probable or potential impact." *Id.* at 1035. We have upheld convictions under the Hobbs Act even where the connection to interstate commerce was slight. *See, e.g., id.* (defendant threatened to deliver embarrassing audio tapes to his victim's employer, a corporation engaged in interstate commerce); *United States v. Hanigan,* 681 F.2d 1127, 1130–31 (9th Cir.1982) (defendant robbed three undocumented alien farm workers, affecting the movement of labor across borders); *United States v. Phillips,* 577 F.2d 495, 501 (9th Cir.1978) (defendant's extortion "threatened the depletion of resources from a business engaged in interstate commerce").

The district court correctly concluded that interstate commerce was affected by Huynh's threats to use her official powers to prevent or interrupt the interstate movement of federal funds. In *United States v. Davis,* 707 F.2d 880 (6th Cir.1983), the Sixth Circuit upheld the Hobbs Act conviction of a county sheriff who extorted political contributions from his deputies, several of whom received funds from federal programs. The court held that the diversion of these federal funds into the sheriff's political "war chest" had a sufficient impact on interstate commerce to bring the extortion within the scope of the Hobbs Act. *Id.* at 884. Similarly, all of the money and property extorted by Huynh was directly or indirectly traceable to federal funds disbursed under the SSI program.

Huynh cites several cases holding that the extortion of personal assets from an individual does not affect interstate commerce merely because the assets are derived from a source engaged in interstate commerce.[3] These cases are distinguishable. Even if some of the "gifts" Huynh received were paid for out of her victims' "personal assets," these assets were traceable to federal SSI funds. *See Blair,* 762 F.Supp. at 1394 (distinguishing *Davis* on this ground). Directly or indirectly, Huynh extorted kickbacks of federal funds moving in interstate commerce. It is irrelevant both that the victims already had received or cashed their checks before Huynh demanded payment and also that some victims paid Huynh in goods or services rather than in cash.

Moreover, we have upheld Hobbs Act convictions even where the defendant sought to extort only personal assets. *See Pascucci,* 943 F.2d at 1035. A Hobbs Act violation requires only that "there would have been an effect on interstate commerce if [the defendant] had carried out his threat." *Id.* Huynh threatened to prevent or interrupt the mailing of SSI checks across state lines if her victims did not pay a kickback. Had Huynh made good on her threat, her action would have "obstruct[ed] . . . or affect[ed] commerce or the movement of any article or commodity [i.e., SSI checks] in commerce." 18 U.S.C. § 1951(a).

■ Huynh contends that her convictions on Counts 3 and 4—relating to her threats that SSI payments would cease should her clients refuse her demands—should be reversed because she did not actually have the power to terminate SSI benefits. She ar-

---

**2.** The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). It is undisputed that Huynh obtained property from her victims "under color of official right."

**3.** *See United States v. Buffey,* 899 F.2d 1402, 1405 (4th Cir.1990) (no effect on interstate commerce where the victim, the majority stockholder in a company engaged in interstate commerce, probably would have paid defendant out of personal rather than corporate assets); *United States v. Mattson,* 671 F.2d 1020, 1025 (7th Cir.1982) (no effect on interstate commerce where the victim paid defendant out of personal assets, even though the victim was employed by a business engaged in interstate commerce); *United States v. Blair,* 762 F.Supp. 1384, 1394 (N.D.Cal.1991) (no effect on interstate commerce where defendant was paid with personal funds withdrawn from money market account held in a bank engaged in interstate commerce).

gues that because she could not have carried out her threats, there could not have been an actual, probable, or potential effect on interstate commerce. However, we have upheld Hobbs Act convictions even in the absence of a potential or actual impact on commerce, as long as the extortion *purported* to have such an effect. *See United States v. Montoya*, 945 F.2d 1068, 1074–75 (9th Cir.1991) (conviction upheld where defendant extorted money from a fictitious front company created by the FBI, where the front company purported to be engaged in interstate commerce).

AFFIRMED.