# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOHN LANNY LYNCH,
*Defendant-Appellant.*

No. 02-30216

D.C. No.
CR-99-18-M-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald M. Molloy, District Judge, Presiding

Submitted February 3, 2005*
San Francisco, California

Filed February 10, 2006

Before: Mary M. Schroeder, Chief Judge, and
Diarmuid F. O'Scannlain, Pamela Ann Rymer,
Andrew J. Kleinfeld, Sidney R. Thomas, Barry G. Silverman,
Kim McLane Wardlaw, William A. Fletcher,
Raymond C. Fisher, Johnnie B. Rawlinson, and
Richard R. Clifton, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Kleinfeld

---

*The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

## COUNSEL

Judy Clarke and Roger J. Peven , Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellant.

John A. Drennan, Department of Justice, Washington, D.C., and Bernard F. Hubley, Assistant United States Attorney, Helena, Montana, for the plaintiff-appellee.

## OPINION

PER CURIAM:

   This appeal arises out of John Lanny Lynch's conviction and twenty-year sentence for violation of the Hobbs Act, 18

U.S.C. § 1951, and his conviction and five-year consecutive sentence for using or carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). In *United States v. Lynch*, 282 F.3d 1049 (9th Cir. 2002) (*Lynch I*), we held that crimes directed toward an individual violate the Hobbs Act only if "the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce; if the acts cause or create the likelihood that the individual will deplete the assets of an entity engaged in interstate commerce; or if the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce." *Id.* at 1053 (quoting *United States v. Collins*, 40 F.3d 95, 100 (5th Cir. 1994)). We remanded with instructions to the district court to apply the *Collins* test, which it found that the government had met. *United States v. Lynch*, 207 F.Supp.2d 1133, 1135 (D. Mont. 2002) (*Lynch II*). When Lynch appealed again, however, we held that the *Collins* test "is utilized where the defendant's conduct had no *direct* effect upon interstate commerce, but only an *indirect* effect." *United States v. Lynch*, 367 F.3d 1148, 1154 (9th Cir. 2004) (*Lynch III*). In doing so we drew upon our earlier decision in *United States v. Atcheson*, 94 F.3d 1237 (9th Cir. 1996), which distinguished between crimes that have direct and indirect effects on interstate commerce. We ordered rehearing en banc to resolve this tension in our law.

We conclude that the *Collins* test is not the exclusive means of establishing Hobbs Act jurisdiction, but that jurisdiction may be shown for a Hobbs Act prosecution of an individual by showing either that the crime had a direct effect or an indirect effect on interstate commerce. Otherwise, we adopt the panel opinion in *Lynch III*.

I[1]

---

[1]We view the evidence given at Lynch's trial in the light most favorable to the government. *United States v. Daychild*, 357 F.3d 1082, 1096 (9th Cir. 2004).

Lynch, the victim Carreiro, and a third participant, Larry Pizzichiello, were all residents of Las Vegas, Nevada. Carreiro and Pizzichiello were drawing workers' compensation benefits and, while all three claimed to be unemployed, they were in fact deeply involved in illegal drug trafficking: the procurement, distribution, and sale of methamphetamine. Originally, Pizzichiello purchased drugs and gave them to Lynch to sell. Thereafter, Carreiro stepped into the role of the purchaser of drugs given to Lynch to sell. Their business arrangement required purchaser and seller to split the profits from the drug sales. A falling out occurred when Lynch failed to pay Carreiro under this arrangement and at the time of the Montana murder, Lynch was substantially indebted to Carreiro.

In 1995, Lynch left Las Vegas, taking with him the firearm subsequently used in Carreiro's murder. After arriving at his father's cabin in northwest Montana, and knowing that Carreiro would shortly be receiving a settlement from his workers' compensation claim, Lynch called Pizzichiello and Carreiro in Las Vegas, Nevada and asked about Carreiro's workers' compensation money. Intending to lure Carreiro to Montana, Lynch asked Pizzichiello and Carreiro to come to Montana from Las Vegas to pick him up after Carreiro received his money and to bring along a pound of methamphetamine. Lynch intended to rob Carreiro of these drugs and his money once Carreiro arrived in Montana.

Carreiro took the bait. After receiving his workers' compensation check and depositing a portion of it in the Las Vegas Federal Credit Union, he and Pizzichiello traveled in Carreiro's truck from Las Vegas to Lynch's father's residence in rural Montana, bringing with them a quantity of methamphetamine and marijuana and a pager Carreiro used in the drug business.

A prosecution witness at Lynch's trial, Pizzichiello testified that the day after he and Carreiro arrived at Lynch's father's

cabin in Montana, Lynch shot and killed Carreiro.[2] Lynch took Carreiro's personal effects from his wallet including his debit card from the Las Vegas Federal Credit Union. Lynch also took other personal effects from Carreiro's body including his shoes and the keys to Carreiro's pick-up truck. To cover up the robbery-murder, Lynch proceeded to burn Carreiro's body in a metal barrel.

Before leaving Montana, Lynch and Pizzichiello withdrew money from Carreiro's Las Vegas Federal Credit Union account by using Carreiro's debit card at a Montana ATM. The pair then drove Carreiro's truck from Montana back to Las Vegas, traveling from Montana through Wyoming and into Utah. On the trip, Lynch and Pizzichiello used Carreiro's debit card to withdraw money electronically from Carreiro's credit union account. Each of these withdrawals required electronic contact from the place of withdrawals in Montana, Utah, and Nevada with computer servers in Nevada and Kansas through the use of interstate telephone lines. While driving through Utah, Carreiro's truck broke down and Lynch and Pizzichiello rented a vehicle to haul the truck back into Las Vegas. Upon their return, Lynch and Pizzichiello used Carreiro's debit card one last time to withdraw the remaining balance in the credit union account. Lynch then repainted Carreiro's truck, which, at the time of his arrest, was in Lynch's possession.

When Carreiro failed to return to Las Vegas, Carreiro's family and friends became concerned and contacted the Las Vegas Police Department. An investigation ensued. The assigned detectives interviewed Lynch and Pizzichiello and determined that their statements about Carreiro were inconsistent. Thereafter, the Las Vegas detectives, through the Clark County District Attorney's office, sought and obtained a court

---

[2] Lynch took the stand in his own defense and testified that it was Pizzichiello who did the shooting; it was not disputed that both Lynch and Pizzichiello were present when Carreiro was killed.

order authorizing the interception of Lynch and Pizzichiello's conversations along with the installation of a pen register and trap and trace device. The wiretaps produced recorded conversations between Lynch and Pizzichiello that established their complicity in the murder and robbery of Carreiro. The detectives also established the use of Carreiro's debit card by Lynch and Pizzichiello in Montana, Utah, and Nevada. In May 1996, the burned remains of Carreiro's body were found near the cabin of Lynch's father in Montana.

Lynch and Pizzichiello were charged and separately convicted for Carreiro's murder in a Montana state court. Both defendants were sentenced to life imprisonment. Those convictions were reversed by the Montana Supreme Court in 1999 by reason of a Montana rule that flatly prohibits the use at trial of non-consensual electronic surveillance of oral and wire communications, even if properly authorized by a state such as Nevada that allows such surveillance pursuant to a valid court order. *State v. Lynch*, 969 P.2d 920 (Mont.1998); *State v. Pizzichiello*, 983 P.2d 888 (Mont.1999). The Montana court ordered new trials.

Rather than retrying the defendants in Montana state court without the suppressed evidence, the Montana authorities apparently referred the matter to the United States Attorney for the District of Montana who, in 1999, obtained indictments of Lynch and Pizzichiello, charging them with (1) violation of the Hobbs Act, 18 U.S.C. § 1951(a), based upon the robbery of Carreiro and (2) the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). Pizzichiello entered into a plea agreement and pled guilty to the Hobbs Act robbery charge. Sentenced to fifteen years imprisonment, he became a principal witness against Lynch in his trial. Lynch was found guilty after a jury trial of the Hobbs Act offense (Count I) and also of using a firearm in the commission of that offense (Count II). He was sentenced to

twenty years on Count I and a consecutive term of five years on Count II.[3]

This is Lynch's second appeal from his federal convictions and sentences. In his first appeal, Lynch raised the same issues. *Lynch I* did not address those issues, but adopted the test set forth in *United States v. Collins,* 40 F.3d 95 (5th Cir. 1994), for determining when the Hobbs Act's federal jurisdictional "hook" is satisfied. The *Collins/Lynch I* test, as discussed in more detail below, is utilized where the defendant's conduct had no *direct* effect upon interstate commerce, but only an *indirect* effect. The panel then remanded the matter to the district court for further findings as to the *indirect* effect of Lynch's activities on interstate commerce. *Lynch I* did not consider the adequacy of the evidence of the *direct* effect on interstate commerce of Lynch's activities, nor did it address any of the other issues now before this court. The district court's subsequent findings are found in *Lynch II*. Lynch appeals again, raising the very same issues that were before, but not decided by, the first panel, as well as a new argument that he should be retried before a jury instructed on the *Collins* test.

## II

### A.    The Sufficiency of the Evidence of Interstate Nexus

[1] The Hobbs Act, 18 U.S.C. § 1951(a), states that:

> Whoever *in any way or degree* obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion, or attempts or conspires so to do, or commits or threatens physical violence to any person or property in

---

[3]A life sentence was not imposed because the jury, as it stated in response to a special interrogatory, was not convinced beyond a reasonable doubt that Lynch was the actual triggerman in Carreiro's murder.

furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(Emphasis supplied).

In *Stirone v. United States*, 361 U.S. 212 (1960), the Supreme Court recognized the very broad scope of the Hobbs Act. "That Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence. The Act outlaws such interference '*in any way or degree.*' " *Id.* at 215 (internal citations omitted) (emphasis supplied).

The Supreme Court further emphasized the broad reach of the "affects commerce" language of the Act in *United States v. Culbert*, 435 U.S. 371 (1978), stating:

[T]he statutory language sweeps within it all persons who have "in any way or degree . . . affect[ed] commerce . . . by robbery or extortion." These words do not lend themselves to restrictive interpretation; as we have recognized, they "manifest . . . a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence."

*Id.* at 373 (internal citations omitted) (second alteration in original).

The Court in *Culbert* also dealt with the suggestion that the Hobbs Act constituted an interference with state's rights in such matters:

With regard to the concern about disturbing the federal-state balance, moreover, there is no question that Congress intended to define as a federal crime

conduct that it knew was punishable under state law. . . . Congress apparently believed, however, that the States had not been effectively prosecuting robbery and extortion affecting interstate commerce and that the Federal Government had an obligation to do so.

*Id.* at 379 (citing to the Congressional Record).

**[2]** The Hobbs Act defines commerce as, inter alia, "all commerce between any point in a State . . . and any point outside thereof; [and] all commerce between points within the same State through any place outside such State." 18 U.S.C. § 1951(b)(3). To establish the interstate commerce element of a Hobbs Act charge, the government need only establish that a defendant's acts had a *de minimis* effect on interstate commerce. *United States v. Atcheson*, 94 F.3d 1237, 1241 (9th Cir. 1996); *United States v. Phillips*, 577 F.2d 495, 501 (9th Cir. 1978). The decision of the United States Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995), holding unconstitutional the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A) (1994), which outlawed the possession of guns in local school zones, did not require a change in the *de minimis* standard. *Atcheson,* 94 F.3d at 1242. The interstate nexus requirement is satisfied "by proof of a probable or potential impact" on interstate commerce. *United States v. Huynh*, 60 F.3d 1386, 1389 (9th Cir. 1995) (internal quotation marks omitted). The government need not show that a defendant's acts actually affected interstate commerce. *Id.* at 1389-90.

**[3]** As *Atcheson* pointed out: "This court has consistently upheld convictions under the Hobbs Act":

even where the connection to interstate commerce was slight. *See, e.g.,* [*United States v. Pascucci,* 943 F.2d 1032, 1035 (9th Cir. 1991)] (defendant threatened to deliver embarrassing audio tapes to his victim's employer, a corporation engaged in interstate

commerce); *United States v. Hanigan*, 681 F.2d 1127, 1130-31 (9th Cir. 1982) (defendant robbed three undocumented alien farm workers, affecting the movement of labor across borders); *United States v. Phillips*, 577 F.2d 495, 501 (9th Cir. 1978) (defendant's extortion "threatened the depletion of resources from a business engaged in interstate commerce").

94 F.3d at 1243 (citing *Huynh*, 60 F.3d at 1389).

*Atcheson* is quite similar to our facts here. There the defendants traveled from Salt Lake City, Utah, to Pocatello, Idaho, took hostages, stole their credit and ATM cards, and unsuccessfully attempted to obtain money from ATM machines. All of these activities took place in Idaho. In addition, the defendants took jewelry which had been taken from one of the hostages across state lines. Finding these activities affected interstate commerce, the *Atcheson* court stated:

> The evidence before the district court establishes that McGrath and Atcheson attempted to obtain, or obtained, out-of-state credit or ATM cards from each of the victims except Deanna Rosen. These acts created a sufficient potential effect on interstate commerce to support their convictions under the Hobbs Act. *See United States v. Rushdan*, 870 F.2d 1509, 1512 (9th Cir. 1989) (conspiracy to possess out-of-state bank cards illegally, and illicit possession of out-of-state bank cards, are offenses which affect interstate or foreign commerce for purposes of 18 U.S.C. § 1029(a)(3)). McGrath and Atcheson's placement of out-of-state phone calls to determine the victims' account balances and credit card limits created a further connection with interstate commerce. *United States v. Lee*, 818 F.2d 302, 305-06 (4th Cir. 1987) (interstate telephone call by a bank manager triggered by defendant's attempt to use

credit card was sufficient to establish interstate com-merce under 18 U.S.C. § 1029).

94 F.3d at 1243.

As noted above, in the prior appeal, the panel focused on the robbery of an individual and adopted the Fifth Circuit's *Collins* test. 282 F.3d at 1053. The *Collins* court, however, and various other circuits which have followed it, have recog-nized not only the distinction between the robbery of individ-uals and businesses, but also the distinction between *direct* and *indirect* effects on interstate commerce. As *Collins* stated:

> Both *direct* and *indirect* effects on interstate com-merce may violate section 1951(a). The govern-ment's "depletion of assets" theory falls into the indirect category. This theory [indirect] relies on a minimal adverse effect upon interstate commerce by a "depletion of the resources of the business which permits the reasonable inference that its operations are obstructed or delayed."

40 F.3d at 99 (emphases supplied). The *Collins* court then concluded that a strictly intrastate robbery "which caused only a speculative *indirect* effect on a business engaged in inter-state commerce," without other direct or indirect effects or relationships with interstate commerce could not fulfill the effect on interstate commerce nexus required for a Hobbs Act conviction. *Id.* at 101; *see also United States v. Hollis*, 725 F.2d 377, 379 (6th Cir. 1984) (noting that "the possibility of an *indirect effect* need not be considered if the extortion had a *direct effect* on commerce") (emphases supplied).

The Eleventh Circuit has also adopted the *Collins* test where the only evidence is of an *indirect* effect on interstate commerce. *See United States v. Diaz*, 248 F.3d 1065, 1085 (11th Cir. 2001). Subsequent to that adoption, the court decided *United States v. Carcione*, 272 F.3d 1297 (11th Cir.

2001). The relevant issue in *Carcione* was the sufficiency of the evidence of an interstate nexus where the defendants traveled from Illinois to Florida to rob an elderly, non-business Florida resident, made interstate phone calls, and returned to Illinois with the robbery proceeds. In determining that such evidence was sufficient to establish a *direct* effect on interstate commerce, and rejecting the application of the *Diaz (Collins) indirect* tests, the court stated:

> While this test is an effective barometer for measuring a defendant's action and their effect on interstate commerce, we have repeatedly held that "in determining whether there is a minimal effect on commerce, each case must be decided on its own facts." Likewise, the "words of the Hobbs Act 'do not lend themselves to restrictive interpretation.' "

*Id.* at 1301 n.6 (citations omitted).

In *United States v. Marrero*, 299 F.3d 653, 656 (7th Cir. 2002), *cert. denied,* 537 U.S. 1145 (2003), the court found sufficient interstate nexus where the defendants lured three drug dealers from Detroit to Chicago on the pretext of selling them cocaine and then robbed the drug dealers, even though the defendants did not have the cocaine to sell. *Marrero* held that the interstate commerce element was established:

> The dealers' business was "in commerce" not only because it bought its merchandise (cocaine) from out of state but also because conducting the business involved crossing state lines when the dealers came to Chicago to try to buy drugs from the defendants.

*Id.*

[4] With the foregoing guidance in mind, we have no hesitation in finding that the evidence in this case, construed as it must be in favor of the government, clearly established that

Lynch's actions, accompanied by Pizzichiello, had a *direct* effect on interstate commerce:

  1. Lynch, Pizzichiello, and Carreiro jointly participated in the illegal drug trafficking business in Las Vegas, Nevada, and their trip to Montana involved the interstate transportation of illegal drugs. *See United States v. Rodriguez*, 360 F.3d 949 (9th Cir. 2004).

  2. Lynch traveled to Montana in a vehicle rented in Nevada.[4]

  3. After his arrival in Montana, Lynch used interstate telephone lines to lure Carreiro from Nevada to Montana for the purpose of robbing him of money and drugs. *See id.* (distinguishing *Lynch I* because robbery of drug traffickers was akin to robbery of a business engaged in interstate commerce); *Atcheson*, 94 F.3d at 1243 (defendants' use of interstate telephone calls created connection with interstate commerce); *see also Marrero*, 299 F.3d at 656 (finding sufficient interstate nexus where defendants lured drug dealers across state lines on pretext).

  4. Pizzichiello testified that Lynch killed Carreiro in Montana with a firearm that Lynch had transported from Las Vegas to Montana. Lynch

---

[4]In Lynch's opening brief, he cites the case of *United States v. Geiger*, 263 F.3d 1034 (9th Cir. 2001), and states that the holding of that case was that the "fact that truck was subject to an out-of-state lease and insured by an out-of-state insurance company insufficient to establish jurisdiction under 18 U.S.C. § 844(i)." The holding of the *Geiger* court was the exact opposite. That court held that the out-of-state truck leasing and insurance was sufficient to establish an effect on interstate commerce. 263 F.3d at 1037-38. The *Geiger* case supports our conclusion that the numerous interstate acts of Lynch and his co-defendant affected interstate commerce.

returned to Las Vegas from Montana with the firearm.

5. After the robbery, Lynch and Pizzichiello used Carreiro's debit card in Montana, Utah, and Nevada to withdraw Carreiro's money from his Las Vegas Credit Union account. *See Atcheson*, 94 F.3d at 1243 (noting that obtaining and attempting to use out of state credit cards and ATM cards created a sufficient potential effect on interstate commerce).

6. The use of the debit card required the use of interstate communications from the source of the use, to Las Vegas, to Kansas, back to Las Vegas, and back to the place of withdrawal. *See id.*

7. Lynch and Pizzichiello traveled from Montana through Utah and back to Nevada in Carreiro's stolen truck.

8. On the return trip to Nevada from Montana, Lynch and Pizzichiello rented a U-Haul truck in Utah to transport Carreiro's disabled truck from Utah to Nevada.

**[5]** Based on the foregoing, we conclude that there was sufficient evidence of a direct effect on interstate commerce to satisfy the Hobbs Act. We also determine that this conclusion is not barred by the law of the case doctrine, as the prior panel never reached a conclusion regarding the sufficiency of the evidence question that was presented to it in the prior appeal. *See, e.g., United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (noting that law of the case generally precludes reconsideration of legal questions *previously decided*).[5]

---

[5]In any event, the application of the law of the case doctrine is discretionary, not mandatory. *Houser*, 804 F.2d at 567. Although adopting the

Lynch also contends that since *Lynch I* adopted the *Collins indirect* effect on interstate commerce test, a new trial is required with instructions containing the *Collins* test. However, since we have determined that there was more than adequate evidence of *direct* effects on interstate commerce, a new trial as to any *indirect* effect under *Collins* is not required.

## B.   Constitutionality of 18 U.S.C. § 924(c)(1)(A)

In pertinent part, 18 U.S.C. § 924(c)(1)(A) provides that "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be punished by incarceration for a term of five years in addition to the punishment provided for the crime of violence. Lynch was found by the jury to have so used a firearm and was sentenced to a consecutive five-year term.

Lynch's argument that § 924(c) is unconstitutional as beyond the scope of the Commerce Clause is, as he recognizes, foreclosed by *United States v. Staples*, 85 F.3d 461 (9th Cir. 1996), and *United States v. Harris*, 108 F.3d 1107 (9th Cir. 1997). This issue having been previously decided, a three-judge panel may not overrule a previous decision of this court, unless "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see*

---

*Collins* test with respect to robbery of individuals, we do not read *Lynch I* to foreclose consideration of other *direct* evidence of an effect on interstate commerce. If we *were* to read it in such a way, then, having considered all of the evidence in this case, we would have to conclude that the prior panel clearly erred in so limiting its consideration and that application of the law of the case doctrine would work a manifest injustice. *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (explaining circumstances in which court will not apply law of the case doctrine).

*also Branch v. Tunnel*, 14 F.3d 449, 456 (9th Cir. 1991), *over-ruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002). There has been no Supreme Court case undercutting *Staples* and *Harris*. Lynch's challenge is also without merit since the enhanced firearm sentence was imposed based on the Hobbs Act conviction with its interstate commerce finding by the jury.

## C.   The Nevada Court Wiretap Orders

Lynch filed pre-trial motions to suppress the fruits of the wiretaps conducted pursuant to Nevada state court orders. Lynch contended that there was no showing of necessity as required by 18 U.S.C. § 2518(1)(c),[6] and there was neither probable cause nor sufficient need for the wiretap orders as required by § 2518(3).[7]

---

[6]Section 2518(1)(c) requires that any application for a judicial order authorizing a wiretap include, inter alia, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

[7]Section 2518(3) allows entry of a wiretap order if the issuing judge determines:

(a)  there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in [18 U.S.C. § 2516];

(b)  there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c)  normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d)  except as provided in [§ 2518(11)], there is probable cause for belief that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

This court's review of a finding of probable cause is deferential. Whether other investigative procedures have been exhausted or why they reasonably appear to be unlikely to succeed if attempted, is reviewed *de novo*. However, the conclusion that the wiretap was necessary in each situation is reviewed for abuse of discretion. *United States v. Brown*, 761 F.2d 1272, 1275 (9th Cir. 1985). A district court's denial of a motion to suppress evidence is reviewed *de novo* and underlying factual issues are reviewed for clear error. *United States v. Summers*, 268 F.3d 683, 686 (9th Cir. 2001).

The district court held a full evidentiary hearing on Lynch's motion to suppress the wiretaps. That hearing and the affidavits submitted in support of the wiretap orders established that both Pizzichiello and Lynch had made false and inconsistent statements to the detectives concerning the disappearance of Carreiro. The affidavits and testimony established that normal investigative procedures and interviews had been employed in good faith and that further investigation or interviews of Pizzichiello and Lynch would not likely succeed in obtaining evidence concerning Carreiro's disappearance. We conclude that the motion to suppress the wiretaps was properly denied. *See United States v. Canales Gomez*, 358 F.3d 1221, 1226-27 (9th Cir. 2004).

## D.   Evidence Of Prior Pizzichiello Misconduct

A district court's ruling precluding testimony is an evidentiary ruling that is reviewed for abuse of discretion. *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). If the ruling precludes the presentation of a defense, review is *de novo. United States v. Ross*, 206 F.3d 896, 898-99 (9th Cir. 2000).

One week prior to the commencement of the trial, the government filed its Fourth Motion in Limine to preclude Lynch from cross-examining Pizzichiello as to his alleged prior acts of violence and threats, citing Federal Rule of Evidence 404(a), which prohibits evidence of a person's character or

trait of character for the purpose of proving action in conformity therewith on a subsequent occasion. Lynch responded to that motion contending, inter alia, that evidence of Pizzichiello's prior violent acts or threats of violence was admissible and relevant "(2) to impeach credibility to the extent he is portrayed as a passive follower acting under the influence of John Lynch; and (3) to the extent these acts *were known to John Lynch*, to establish his lack of intent to rob and to assist *in explaining his actions in covering up the crime*." (emphases supplied).

**[6]** Federal Rule of Evidence 404(a), concerning character evidence states, in pertinent part, that:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

>> (1) Character of Accused . . .

>> (2) Character of Alleged Victim— Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same . . .

>> (3) Character of Witness—Evidence of the character of a witness, as provided in rules 607, 608 and 609.

Lynch did not then contend, as he now does, that the testimony of other witnesses should be admitted to corroborate his trial testimony that the reason he accompanied Pizzichiello from Montana back to Nevada and did not go to the police at any time was because he was afraid of Pizzichiello. Nor did Lynch cite to the district court the case he now relies on, *United States v. James*, 169 F.3d 1210 (9th Cir. 1999) (en

banc), a case which we find, *infra,* is distinguishable from this case.

**[7]** The district court granted the government's motion and precluded evidence "that pertains to specific instances of threats made by any witness, control issues, affiliation with organizations, dangerous character of somebody who's a witness," stating that this ruling was based on Rule 404(a) and (b), 405(b), 607, 608, and 609, which preclude prior acts of misconduct and violence "for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). The district court also performed the balancing analysis provided for under Rule 403. Neither in that ruling nor at trial did the court preclude Lynch from testifying that the reason that he stayed with Pizzichiello after Carreiro's murder and never contacted the police was his fear of Pizzichiello.

Lynch was further allowed to testify that Pizzichiello "always carried a gun"; that his fear was enhanced "because I just saw him kill somebody"; that "if anything I would have done would have triggered him to react, he would have shot me, I had no doubt"; and that "Larry wasn't going to let me leave him anyway." The district court did sustain an objection to Lynch's testimony that "if somebody were to come there, they would have got shot," and also sustained an objection to Lynch's testimony that "Larry's a dangerous guy." While those rulings may have been inconsistent and even erroneous, they were not prejudicial in that Lynch was allowed to fully express his fear of Pizzichiello to the jury, including further statements that Pizzichiello was "threatening me and threatening to kill me," and that he went with Pizzichiello after the shooting because he was afraid of him.

Lynch primarily relies upon *United States v. James*, 169 F.3d 1210 (9th Cir. 1999) (en banc)*,* to support his argument that he should have been entitled to introduce evidence of acts of misconduct and violence by Pizzichiello, unknown to Lynch at the time of the murder, that took place prior to the

shooting of Carreiro. Lynch suggests that such evidence from other witnesses would have corroborated Lynch's fear of Pizzichiello. However, Lynch's testimony was that his fears arose from Pizzichiello's shooting of Carreiro. None of the alleged corroborating witnesses had knowledge of those events.

The defendant in *James* was charged with aiding and abetting the shooting death of David Ogden by furnishing the gun with which her daughter shot and killed Ogden. Her defense was one of self-defense based upon Ogden's prior violence that she had seen and had visited upon her, as well as atrocious crimes about which Ogden had bragged to her. She offered corroborating evidence that these atrocities had actually occurred, although she was unaware of that corroboration at the time of the murder. *Id.* at 1214. The trial court rejected the proffered evidence, holding that the only relevant evidence of Ogden's violence was that known to the defendant at the time of Ogden's killing.

The Ninth Circuit in *James* found that the trial court's ruling was too narrow, holding:

> It was absolutely necessary to her defense for the jury to believe (1) that she wasn't making up the stories and (2) that, when she heard them, she heard them from the man who had actually done these terrible things and who was not just spinning tales. The records proved that he had done them so that the stories of his wild exploits would have had the ring of truth to her, and the records proved that what Ernestine James testified to had actually taken place. The records corroborated her testimony, and the records corroborated her reason to fear.

*Id.* at 1214.

**[8]** Clearly, the character of the victim in *James* was relevant to the defendant's defense of self-defense, and so was

admissible under Rule 404(a)(2) — which pertains only to evidence of the character of the victim. In the instant case, the character of the *victim* Carreiro was not in issue and Lynch's defense to the Hobbs Act charge was not one of self-defense. Evidence of Lynch's knowledge of Pizzichiello's violence was offered and admitted for the limited purpose of showing why Lynch stayed with him after the killing of Carreiro. Prior acts of violence or alleged "mob" connections by Pizzichiello, unknown to Lynch, only showed possible propensity on the part of Pizzichiello, rather than Lynch, to kill Carreiro. Whether Lynch or Pizzichiello killed Carreiro was not an element of the Hobbs Act charge or a defense thereto.

The district court did not err in concluding that the purpose of the proffered testimony was to show a character of violence and a propensity on the part of Pizzichiello to kill another person. Such evidence is precluded under Rule 404. In addition, the district court balanced the probative value of the evidence as opposed to its prejudicial effect under Rule 403.

**[9]** While "it may well be that courts should indulge the accused when the defendant seeks to offer prior crimes evidence of a third person for an issue pertinent to the defense other than propensity," *United States v. McCourt*, 925 F.2d 1229, 1236 (9th Cir. 1991), and courts should allow full and complete inquiry as to the background of a co-defendant testifying against another defendant, in this case the district court reasonably concluded that the precluded evidence was strictly propensity evidence as to Pizzichiello.

### E.   The 18 U.S.C. § 924(c) Conviction

**[10]** Lynch contends it was error to permit the jury to convict him of Count II for using or carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) on the theory that he was *either* a principal or an aider and abettor. He contends that the government proceeded at trial solely on the theory that Lynch acted alone in using the gun, rather than

that he aided and abetted Pizzichiello in the murder of Carreiro. Lynch did not challenge the aiding and abetting instruction until his post-trial Rule 29 motion based upon the alleged insufficiency of the evidence. There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Daychild*, 357 F.3d 1082, 1096 n.22 (9th Cir. 2004).

**[11]** In this case, the jury could have reasonably found that it was Lynch who, as a principal, used the firearm in the killing of Carreiro. The jury could have also concluded that Lynch aided and abetted the robbery of Carreiro with the use of a firearm. "[A] defendant can be convicted of aiding and abetting even if a principal is never identified or convicted," so long as the evidence established that the criminal offense was committed by someone. *United States v. Powell*, 806 F.2d 1421, 1424 (9th Cir. 1986). Clearly, in this case, the evidence was undisputed that either Pizzichiello or Lynch used a firearm in the murder and robbery of Carreiro. Lynch's challenge to the lack of aiding and abetting evidence is without merit.

## F. Cross Reference To First Degree Murder In Sentencing

The district court imposed a twenty-year sentence on Lynch for the Hobbs Act offense (Count I). In a special interrogatory the jury determined that the government had failed to prove beyond a reasonable doubt that Lynch had murdered Carreiro. However, the district court found by clear and convincing evidence that Lynch had participated in the murder and therefore cross-referenced United States Sentencing Guidelines Manual (U.S.S.G.) § 2A1.1, the first-degree murder guideline, as required by U.S.S.G. § 2B3.1(c)(v).

**[12]** The Supreme Court has held that a jury's verdict of acquittal does not prevent the sentencing court from consider-

ing conduct underlying the acquitted charge. *United States v. Watts*, 519 U.S. 148, 157 (1997). In this case, Lynch was not found innocent of a charge of murdering Carreiro. In response to the special interrogatory, the jury merely found that they did not unanimously agree that the government had established Lynch's murder of Carreiro by proof beyond a reasonable doubt. It was therefore not error for the court to make its own finding in sentencing Lynch.

**[13]** In this circuit, when a sentencing factor has an extremely disproportionate effect on the sentence relative to the conviction, the government must prove such a factor by clear and convincing evidence. *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999). Since the use of the enhancement in this case increased the sentencing range by 105 to 203 months, the clear and convincing standard applied. There was sufficient evidence for such a finding by the district court and the defendant does not challenge the sufficiency of that evidence for the clear and convincing finding. There was no error in the court's use of the first degree murder cross reference.

### III

**[14]** The government may establish jurisdiction for prosecution under the Hobbs Act for a crime directed toward an individual by showing either that the crime had a direct effect or an indirect effect on interstate commerce. Any statement to the contrary in *Lynch I* is overruled.

The evidence clearly established a direct effect on interstate commerce. As previously determined by this court, 18 U.S.C. § 924(c)(1)(A) is not unconstitutional as being beyond the scope of Congress' power under the Commerce Clause. There was probable cause for and an adequate showing of necessity for the issuance of the Clark County, Nevada wiretaps. A new trial utilizing the indirect analysis as to the effect on interstate commerce is not required since ample evidence of a direct

effect existed. The evidentiary rulings of the district court precluding propensity evidence of the character of Pizzichiello were not erroneous. The aiding and abetting instruction on the use or carrying of a firearm was not in error and sufficient evidence supported the defendant's conviction on Count II. The district court properly cross referenced the murder Guideline in determining the defendant's Guideline offense level.

AFFIRMED.

KLEINFELD, Circuit Judge, concurring:

I concur in the result. I would not, however, reach most of the questions the per curiam opinion attempts to resolve because, on the facts of this case, the opinion is merely advisory. This case plainly involves a substantial and direct effect on interstate commerce. A person in Montana engaged in a commercial transaction with a person in Nevada, causing contraband to be brought to Montana. There, the Montana man killed the Nevada man in order to steal the merchandise that had been transported. The doctrine of constitutional avoidance[1] counsels that we should not attempt to clarify abstruse and esoteric questions of constitutional law in cases where they will not affect the decision.

Our opinion is driven by a desire to resolve the tension between our decisions in *Lynch I*[2] and *Lynch III*[3] as explained in Judge Berzon's concurrence in *Lynch III*.[4] We can wait until the inconsistencies matter, and should. This case is squarely within Congress' power to regulate interstate com-

---

[1] *See,* e.g., *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1069 (9th Cir. 2004).

[2] *United States v. Lynch*, 282 F.3d 1049 (9th Cir. 2002) (*Lynch I*).

[3] *United States v. Lynch*, 367 F.3d 1148 (9th Cir. 2004) (*Lynch III*).

[4] *Lynch III*, 367 F.3d at 1163-64.

merce under any interpretation. Federal courts should not stretch beyond the decisions they need to make in the futile hope of cleaning all of the cobwebs out of constitutional law.