NOT FOR PUBLICATION

FILED

MAY 04 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| RONALD S. BLOOMFIELD; JOHN EARL MARTIN, Sr., | ) ) ) | No. 14-71133 |
| Petitioners, | ) ) | SEC No. 3-13871 |
| v. | ) ) ) | MEMORANDUM[*] |
| U.S. SECURITIES & EXCHANGE COMMISSION, | ) ) ) | |
| Respondent. | ) ) ) | |

On Petition for Review of an Order of the
Securities & Exchange Commission

Argued and Submitted April 6, 2016
Pasadena, California

Before: FERNANDEZ and BEA, Circuit Judges, and GONZALEZ ROGERS,[**] District Judge.

Ronald Bloomfield ("Bloomfield") and John Martin ("Martin")

(collectively, "Petitioners") petition for review of an order of the Securities and

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]The Honorable Yvonne Gonzalez Rogers, District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

Exchange Commission (the "Commission") which imposed sanctions, disgorgement remedies, and penalties upon Petitioners for their violations of the Securities Act of 1933[1] and the Securities Exchange Act of 1934.[2] We deny their petition.

(1)    Bloomfield and Martin were, at all relevant times, stock brokers employed by Leeb Brokerage Services, Inc. ("Leeb"). Petitioners assert that the evidence before the Commission was insufficient[3] to support the Commission's determination that Petitioners violated Section 5 of the 1933 Securities Act by selling unregistered securities in interstate commerce (without an exemption).[4] Petitioners claim entitlement to the Section 4(a)(4) "Broker's Exemption," which exempts from Section 5's registration requirement "transactions by a broker in

_____

[1] 15 U.S.C. §§ 77a–77aa ("Securities Act").

[2] 15 U.S.C. §§ 78a–78pp ("Exchange Act").

[3] *See World Trade Fin. Corp. v. SEC*, 739 F.3d 1243, 1247 (9th Cir. 2014).

[4] *See* 15 U.S.C. § 77e(a), (c) (hereafter all references to section numbers are to 15 U.S.C. unless otherwise stated). We have previously held that "[t]o establish a prima facie case for violation of Section 5, the SEC must show [only] that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *See SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). "Once the SEC introduces evidence that a defendant [sold or offered an unregistered security through means of interstate commerce] the defendant then has the burden of proof in showing entitlement to an exemption." *Id.*

2

which such broker . . . . [a]fter reasonable inquiry is not aware of circumstances indicating that the person for whose account the securities are sold is an *underwriter* with respect to the securities or that the transaction *is a part of a distribution of securities of the issuer.*" 17 C.F.R. § 230.144(g) (emphases added).

Petitioners argue that the Commission, as part of its prima facie case, bore the burden of showing that Petitioners do *not* qualify for the Broker's Exemption. We reject this argument as contrary to controlling precedent. *See, e.g.*, *World Trade Fin. Corp. v. S.E.C.*, 739 F.3d 1243, 1247 (9th Cir. 2014); *see also supra*, n.4.

Petitioners relatedly argue that there is no substantial evidence to support the Commission's finding that Petitioners were not entitled to the Broker's Exemption because there is no evidence that Appellants' customers were *in fact* underwriters or were *in fact* distributing securities on behalf of an issuer in violation of Section 5. We reject this argument as well. It is clear from *World Trade* that the touchstone of the Broker's Exemption is whether the broker's *inquiry* into the nature and source of the shares he sold was "reasonable" under the circumstances of a given transaction—not whether the broker's customers were *actually* acting as underwriters. *Id.* at 1247–50. Here, there was substantial evidence to support the Commission's determination that neither Bloomfield nor Martin conducted the

3

kind of "reasonable inquiry" required to qualify for the Broker's Exemption with respect to Petitioners' transactions in the nine unregistered securities as to which Petitioners have been charged with Section 5 violations. The record contained evidence of many "red flags" that the Commission reasonably concluded should have alerted Bloomfield and Martin to the need to conduct a "searching inquiry." *Id.* at 1248. There is also substantial evidence to support the Commission's determination that Petitioners, instead, did next to nothing. Petitioners' suggestion that they could, or properly did, rely upon others to investigate for them is contrary to our holding in *World Trade*. *Id.* at 1248–49 ("[B]rokers rely on third-parties at their own peril, and will not avoid liability through that reliance when the duty of reasonable inquiry rests with the brokers."). The Commission did not err.

(2)     Bloomfield and Martin next assert that the evidence was insufficient to support the Commission's determination that they had violated the Exchange Act by aiding and abetting[5] the failure of Leeb, the broker-dealer at which Petitioners were registered representatives, to file Suspicious Activity Reports ("SARs").[6] Again we disagree. Preliminarily, if Leeb violated the SARs

---

[5] *See Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003); *see also* § 78t(e).

[6] *See* § 78q(a); 17 C.F.R. § 240.17a-8; 31 C.F.R. § 1023.320(a)(1), (2); *see also* 31 C.F.R. § 103.19 (a)(1), (2) (2005).

(continued...)

4

requirements, it was not necessary that Leeb, the principal, be charged in order to establish the aiding and abetting liability of Bloomfield and Martin. *See, e.g., United States v. Mann*, 811 F.2d 495, 497 (9th Cir. 1987); *see also United States v. Lynch*, 437 F.3d 902, 915 (9th Cir. 2006) (en banc) (per curiam). Moreover, substantial evidence supports the Commission's determination that the numerous transactions engaged in by Bloomfield and Martin on behalf of their customers constituted suspicious activity[7] and that Leeb was required to file SARs regarding that activity.[8] Here, again, there were many red flags indicative of potential Exchange Act violations: for example, that the securities involved were penny stocks,[9] that entities were buying certain securities while associated entities were selling them,[10] that the entities selling the securities were receiving those shares in

---

[6](...continued)

[7]*See* Nat'l Ass'n of Sec. Dealers, Inc. (NASD), Special NASD Notice to Members 02-21, Anti-Money Laundering 10–11 (2002) (hereafter "NASD Notice").

[8]*See* 17 C.F.R. § 240.17a-8; Requirement that Brokers or Dealers in Securities Report Suspicious Transactions, 67 Fed. Reg. 44,048, 44,050–51 (Jul. 1, 2002); Requirement of Brokers or Dealers in Securities to Report Suspicious Transactions, 66 Fed. Reg. 67,670, 67,672–73 (proposed Dec. 31, 2001).

[9]*See* NASD Notice at 11; *see also* § 78c(a)(51)(A); 17 C.F.R. § 240.3a51-1.

[10]*See* NASD Notice at 10–11.

5

the form of large "deliveries" from unknown and thinly traded issuers, and that proceeds from a large number of security transactions were being sent to a foreign tax-haven.[11]

The evidence also supports the Commission's determination that Bloomfield and Martin intentionally, or at least recklessly, aided and abetted Leeb in its SAR violations. Petitioners were undoubtedly the front line in the detection and screening of suspicious transactions. There is substantial evidence to support the SEC's factual determination that Martin and Bloomfield knew or reasonably should have known of the red flags listed above, and knowingly or recklessly failed to investigate or take reasonable steps to ensure Leeb's compliance with SAR filing requirements.[12]

(3)     Finally, Bloomfield and Martin assert that the penalties imposed upon them were so disproportionate to their offenses that the Eighth Amendment to the United States Constitution was violated. *See United States v. Bajakajian*, 524 U.S. 321, 327–28, 334 (1998); *see also Balice v. U.S. Dep't of Agric.*, 203 F.3d 684,

---

[11] *See id.* at 11.

[12] *See Cohen v. NVIDIA Corp. (In re NVIDIA Corp. Sec. Litig.)*, 768 F.3d 1046, 1053 (9th Cir. 2014), *cert. denied*, __ U.S. __, 135 S. Ct. 2349, 192 L. Ed. 2d 143 (2015); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1180 (9th Cir. 2009); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568–69 (9th Cir. 1990) (en banc).

698–99 (9th Cir. 2000). While the penalties were substantial, on the facts of this case we disagree with their contentions. Their offenses were extensive—Bloomfield and Martin engaged in a large number of transactions in unregistered securities over a period of several years without investigating whether the transactions in unregistered securities were lawful. The laws precluding that kind of activity were well known to them, were specifically applicable to individuals in their positions, and were largely ignored by them with the excuse that others could stop the transactions.

Moreover, the penalty structure for this genre of offenses was carefully graduated or tiered by Congress.[13] And within that structure, the Commission is given a good deal of flexibility. In fact, the Commission could have assessed a separate penalty for each of the many sales involved, but, instead, limited itself to one penalty per named security (nine of them) rather than one per sale. It also added just one penalty for all of the SAR violations, regardless of the total number.

Finally, Bloomfield and Martin point out that the Commission did not show the total loss to members of the public who were placed at risk by the improper dealing. However, they ignore the inherent damage to the whole regulatory regime

---

[13] *See* 15 U.S.C. § 78u-2(a), (b); *see also* 17 C.F.R. § 201.1003; 17 C.F.R. pt. 201, subpart E, tbl.III (2005).

that the Commission is obligated to protect and the harm that their participation in the machinations of their customers could do to public confidence in the securities market in general. *Cf. Balice*, 203 F.3d at 699. In sum, the Commission did not abuse its discretion in applying its penalty structure to Petitioners' offenses; nor were the penalties so excessive as to violate the Eighth Amendment.

Petition DENIED.